# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In the Matter of:                }
JOHNSON SYSTEMS, INC.       }   CASE NO. 09-81758-JAC-11
EIN:   XX-XXX0712         }
                           }   CHAPTER  11
             Debtor(s).      }

## MEMORANDUM OPINION

Johnson Systems, Inc. ("Johnson Systems" or "debtor") objects pursuant to 11 U.S.C. §§ 502(b) and 505(a) to the amended proof of claim filed by the Internal Revenue Service ("IRS") in this case to the extent the government assessed penalties against the debtor for failure to timely file a required return, failure to timely pay a tax, and failure to timely make required deposits of taxes pursuant to 26 U.S.C. §§ 6651(a)(1), 6651(a)(2), and 6656(a).  The debtor asserts that it is entitled to an abatement of the penalties on the grounds that its failure to satisfy its tax obligations was due to reasonable cause and not willful neglect.  This case is pending before the Court on the parties' cross-motions for summary judgment.   For the reasons set forth below, the Court finds that summary judgment is due to be entered in favor of the IRS for each of the tax years in question.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure.  Summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002).

The moving party always bears the initial burden of showing that there are no genuine issues of material fact to be decided at trial. Celotex, 477 U.S. at 323. When the moving party has satisfied its burden, the non-moving party "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248(quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

The evidence and all factual inferences therefrom must be viewed in the light most favorable to the party opposing the motion and all reasonable doubts about the facts must be resolved in favor of the non-moving party. *Acevedo v. First Union Nat'l Bank*, 476 F.3d 861, 865 (11th Cir. 2007); *Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.)*, 440 F.3d 1296, 1300 (11th Cir. 2006); *Loren v. Sasser*, 309 F.3d 1296, 1301-02 (11th Cir. 2002); *Hyman*, 304 F.3d at 1185.

When ruling on cross-motions for summary judgment, the court must consider the motions independently and view the evidence on each motion in the light most favorable to the party opposing the motion. *Fair Housing Council of Riverside County*, 249 F.3d 1132, 1136 (11th Cir. 2201); *Avocent Huntsville Corp.v. ClearCube Tech.*, Inc., 443 F.Supp.2d 1284,

1293 (N.D. Ala. 2006). The Court having considered each motion independently, finds that summary judgment is due to be entered in favor of the IRS for each of the tax years in question.

## BACKGROUND

1.  On April 30, 2009, Johnson Systems, a Georgia corporation, filed the above styled bankruptcy petition. The debtor has fabricates and installs various types of pollution control and air conveying systems for cotton gins.

2.  On November 12, 2009, the IRS filed an amended proof of claim for $366,046.99 for debtor's unpaid and unfiled Form 940 unemployment taxes for the tax years 2001, 2002, 2003, 2004, and 2005, and debtor's Form 941 employment taxes for the fourth quarter of 2003 through the third quarter of 2004, the second quarter of 2005, and the third and fourth quarters of 2007.

3.  The proof of claim includes a secured claim for $363,173.86, an unsecured claim totaling $1,440.84, and a priority claim totaling $1,432.29. The secured portion of the claim includes penalties assessed by the IRS against Johnson Systems totaling $104,569.91 for the tax periods 2001 through 2005, and the tax period 2007. The penalties for debtor's Form 940 unemployment taxes totals $5,393.58, while the penalties for debtor's Form 941 employment or withholding taxes totals $99,176.33.

3

4. Johnson Systems only objects to the penalties assessed against it for the tax periods 2001 through 2005.[1] Penalties for the tax periods for 2001 through 2005 total $100,674.97. Johnson Systems proposes to pay the balance of the tax debt and interest thereon through its Chapter 11 plan which has not yet been confirmed.

5. Dewey O. Johnson, Jr. ("Dewey Johnson") is the sole shareholder and president of Johnson Systems. From the inception of the business in 1991, Dewey Johnson has been in charge of sales and the drafting and fabrication of the system designs. Dewey Johnson is a third generation fabricator.

6. Dewey Johnson's wife, Gail M. Johnson ("Gail Johnson"), was the debtor's secretary and bookkeeper during the relevant time periods. She was in charge of handling the company's accounts payable, accounts receivable, payroll, and other general office duties including filing and paying the debtor's taxes.

7. In approximately January of 2002, Dewey Johnson's father, Dewey O. Johnson, Sr. ("Mr. Johnson"), moved into Gail and Dewey Johnson's home. Mr. Johnson weighed 87 pounds at the time and suffered from a plethora of illnesses including chronic obstructive pulmonary disease, depression, and narcotic additions. Mr. Johnson required constant care which Dewey and Gail Johnson provided until Mr. Johnson

---

[1] Initially, the debtor objected to the 2007 penalties, but has now conceded that its failure to file and pay taxes owed for the 2007 tax year was not due to reasonable cause. *See* Johnson Systems' Motion for Summary Judgment and Response in Opposition to the United States' Motion for Summary Judgment, n. 1.

4

passed away in October of 2002. During this time period, Gail Johnson was only able to spend approximately eight hours per week working for Johnson Systems.

8.  Prior to 2002, Johnson Systems was located in Moultrie Georgia. In the fall of 2002, Johnson systems relocated its business operations to Florence, Alabama. *See* Dewey Johnson Aff. ¶ 3. The Johnsons relocated the business from Georgia to Alabama to be closer to Gail Johnson's mother, Ida Motely ("Mrs. Motely"), who lived in Somerville, Tennessee. Mrs. Motely was diagnosed with leukemia in 2001.

9.  After Mr. Johnson passed away in October of 2002, Gail Johnson began spending a considerable amount of time in Tennessee caring for her mother whose condition became progressively worse soon after her father-in-law passed away. At that point, Gail Johnson began spending on average three to four days per week in Tennessee caring for and visiting her mother until Mrs. Motely passed away in April of 2005.

10. Dewey Johnson testified that the amount of time his wife spent visiting and caring for her mother adversely affected his ability to make sales calls because he choose to stay closer to home during that time period. He wanted to be available to care for their two school age children when his wife was away caring for her mother. (Dewey Johnson Dep. 90:12 - 91:17).

11. However, even before his father became ill, Dewey Johnson had hired a sales team in 2000 to begin handling sales for Johnson Systems. Johnson Systems retained the sales team from 2000 until 2004. (Dewey Johnson Dep. 23:13 - 24:16). Unfortunately, it appears that the sales team cost Johnson Systems more than the team

generated in sales. (Dewey Johnson Dep. 37:3 - 39:15). At some point, Dewey and Gail Johnson realized that Johnson Systems was simply not seeing the kind of sales that it had realized in the past with Dewey Johnson actively making sales calls and generating business. (Dewey Johnson Dep. 39-1:15).

12. Although it is undisputed that Gail Johnson spent a tremendous amount of time visiting with and caring for her mother throughout Mrs. Motely's illness, she continued to work at Johnson Systems throughout the time period in question during which the debtor's tax forms were not filed and taxes were not paid. Throughout the relevant time period, Gail Johnson continued to sign up to 75 checks per month for the debtor paying creditors when funds were available. Though she was assisted by a payroll clerk during 2002 and 2003, Gail Johnson continued to process payroll for the debtor throughout the relevant time period. Gail Johnson testified that she paid other employees before she paid herself and her husband if Johnson Systems did not have sufficient funds to cover all payroll expenses. (Gail Johnson Dep. 58:10-59:22).

13. The debtor's Form 940 taxes were prepared by the debtor's accountants. Once the annual form was prepared, the accountant would send the form to Gail Johnson for her to "sign and send off and take care of paying." (Gail Johnson Dep. 29:19-30:1). If the accountant forgot to prepare the form, Gail Johnson testified that she "just normally - - I just forgot about it." (Gail Johnson Dep. 30:6-12). If she received something in the mail, presumably from the IRS, Gail Johnson testified that she would "take care of it" at that point. (Gail Johnson Dep. 30:6-23). Gail Johnson further

6

testified that she and her husband never hired anyone on behalf of Johnson Systems to help with the accounting functions she normally performed for the company because she knew she could do the job and they could not really afford to hire someone else to come in and do a job that the company could not even pay the Johnsons to perform at times. (Gail Johnson, Dep. 72:13-73:5).

14. Dewey Johnson testified that his wife being away from the business to care for his father and her mother combined with his decision to stay close and not do the normal selling that he had historically done caused Johnson Systems to not be able to pay its taxes. (Dewey Johnson Dep. 9:16 - 95:2).

15. Dewey Johnson further testified that he was aware throughout the relevant time period that the debtor's Form 940 and 941 returns were not being filed and that the taxes were not being paid. Dewey Johnson testified that he would have paid the taxes had the money to do so been available. (Dewey Johnson Dep 95:3-96:7). The Johnsons never consider filing for an extension on behalf of the company. (Dewey Johnson Dep. 96:8-11).

16. Dewey Johnson testified that the fabrication business in general has been a "roller-coaster ride" for several years not just for Johnson Systems, but also for the cotton industry business overall. (Dewey Johnson Dep. 21:1-22:21). Although there was still plenty of business during this time period, Johnson testified that you had to basically work harder to make sales and generate the business. (Dewey Johnson Dep. 44:7-19).

Case 09-81758-JAC11   Doc 97   Filed 06/21/10   Entered 06/21/10 15:32:09   Desc Main
Document     Page 7 of 22

17. Johnson Systems has now redesigned its business model to prevent it from incurring tax liabilities similar to those at issue in this case. Johnson Systems now builds to order rather than building up inventory for the next season and when work is low the debtor lays off employees instead of retaining them as it had historically done. (Dewey Johnson Dep. 116:5-117:14).

18. Prior to her mother's death in 2005, Gail Johnson met with an IRS agent regarding the taxes that were due and worked out an installment agreement for Johnson Systems to make monthly installment payments of $5,000.00 per month. This agreement apparently fell through at some point and the IRS was not willing to enter into another settlement agreement leading in part to the debtor filing for bankruptcy relief.

Based upon the foregoing, Johnson Systems argues that it has demonstrated that its failure to satisfy its tax obligations was due to reasonable cause and not willful neglect for the tax years 2001 through 2005. The IRS counters that the Johnsons continued to operate Johnson Systems throughout the relevant time period and argues that the illnesses of the Johnsons' relatives did not affect the business enough to excuse the debtor's non-filing and non-payment for five years of unemployment taxes and seven quarters of employment or withholding taxes.

## CONCLUSIONS OF LAW

Pursuant to 26 U.S.C. §§ 3102(a) and 3402(a) of the Internal Revenue Code, Johnson Systems was required to deduct and withhold income and social security taxes from its

8

employees' wages.  Johnson Systems was required to hold these funds, funds which been deducted from employees wages, in special trust fund for the United States.  26 U.S.C. § 7501.  Money held in trust for the government "does *not* belong to the taxpayer and . . . is clearly not simply part of its 'other operating funds.'" *Brewery, Inc. v. United States*, 33 F.3d 589, 592 (6th Cir. 1994)(finding taxpayer's use of trust fund taxes to pay other creditors due to shortage of operating funds was not reasonable cause for nonpayment).  Similarly, pursuant to 26 U.S.C. §§ 3301-3311, the debtor was required to file Form 940 unemployment tax returns and pay unemployment taxes for its employees.  When Johnson Systems failed to timely file its returns and pay these taxes, the IRS assessed penalties pursuant to 26 U.S.C. §§ 6651(a)(1), (a)(2).

Section 6651(a)(1) imposes a penalty against a taxpayer for *failure to file* a return on the prescribed date of 5 percent of the tax required to be shown on the return for each month or fractional month for which there is a failure to file, not to exceed 25 percent.  26 U.S.C. § 6651(a)(1).  The penalty is added to the tax owed for the year "unless it is shown that such failure is due to reasonable cause and not due to willful neglect . . ."  26 U.S.C. § 6651(a)(1).  Similarly, § 6651(a)(2) imposes a penalty for *failure to pay* the tax liability shown on the taxpayer's return on or before the prescribed date.  This penalty is also added to the tax owed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect."  26 U.S.C. § 6651(a)(2).

The Supreme Court has explained that "Congress' purpose in the prescribe penalty was to ensure timely filing of tax returns to the end that tax liability will be ascertained and

9

paid promptly." *United States v. Boyle*, 469 U.S. 241, 244 (1985)(establishing a bright line rule that reliance on an agent to file a timely return when the due date is ascertainable by the taxpayer does not constitute reasonable cause). "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *Id.; See also Staff It, Inc. v. United States*, 482 F.3d 792, 800-801 (5th Cir. 2007)(explaining that this burden is so heavy that to the Fifth Circuit's knowledge only one appellate opinion has ever concluded that a taxpayer's failure to pay payroll taxes in a timely fashion was the result of reasonable cause and not willful neglect, citing *Eastwind Indus., Inc. v. United States*, 196 F.3d 499 (3rd Cir. 1999)). The Court must make factual findings for each of the tax years at issue regarding whether the debtor has made the statutorily required showing of reasonable cause for each year in question. Sanford v. United States, 979 F.2d 1511, 1514 (11th Cir. 1992).

### *Reasonable Cause*

Although the term reasonable cause is not defined in the Tax Code, "the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" *Boyle,* 469 U.S. at 246 (quoting 26 CFR § 301.6651(c)(1)). Reasonable cause for failure to pay a tax on time will exist "where the taxpayer 'exercised ordinary business care and prudence in providing for payment of his tax and was nevertheless either unable to pay

the tax or would suffer an undue hardship' if he paid the tax on time." *Sanford*, 979 F.2d at 1514 n.8.

In determining whether a taxpayer has exercised ordinary business care and prudence, consideration will also "be given to the nature of the tax which the taxpayer has failed to pay." 26 CFR § 301.6651-1(c). For example, facts and circumstances which "may constitute reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes . . . . that are collected or withheld from any other person." 26 CFR § 301.6651-1(c). Thus, the Sixth Circuit has held that the facts and circumstances required to establish reasonable cause must be particularly compelling where the funds at issue are trust fund taxes withheld from employees' wages. *See Brewery, Inc. v. United States*, 33 F.3d 589, 592 (6th Cir. 1994).

In *United States v. Boyle*, 469 U.S. 241, 244 (1985), the Supreme Court recognized, without having to rule on same, that the IRS has articulated eight reasons for a late filing that the government considers reasonable cause for exempting penalties for late filing including the "death or serious illness of the taxpayer or a member of his immediate family." *See Boyle*, 469 U.S. at 243 n.1(citing Internal Revenue Manual (CCH) § 4350, (24) ¶ 22.2(2) (Mar. 20, 1980)(Audit Technique Manual for Estate Tax Examiners)); *See also Chamberline v. C.I.R.,* 14 Fed. Appx. 69, 72-73 (2nd Cir. 2001)(recognizing the factors that constitute reasonable cause generally include unavoidable postal delays, death or serious illness of the taxpayer or a member of his immediate family, or reliance on the mistaken legal opinion of a competent tax advisor).

11

In *Boyle*, the Supreme Court established a bright line rule that reasonable cause does not include a taxpayer's reliance on an agent employed by the taxpayer. That case involved an individual taxpayer serving as a executor of his mother's will. The executor retained an attorney to handle the estate taxes and after the attorney failed to file the estate tax return when same was due, the executor claimed that the resulting penalties should be abated because the attorney's mistake constituted reasonable cause for the executor's failure to file.

In *Atlas Therapy, Inc., v. United States,* 66 F.Supp.2d 1203, 1207 (N.D. Ala. 1991), the district court found that the bright line rule established in *Boyle* applies equally as well to corporations to prevent such an entity from prevailing against tax penalties simply by showing the corporation relied on an employee to handle payroll taxes. *Atlas Therapy* recognized, however, that *Boyle* distinguished cases involving a taxpayer with a "disability" which precludes compliance with the Tax Code requirements. *Id.* "[A] court may find reasonable cause under § 6651(a)(1) or § 6651(a)(2) if a taxpayer convincingly demonstrates that a disability beyond his control rendered him unable to exercise ordinary business care." *Sanford*, 979 F.2d at 1514 n. 8. In *Boyle,* the Supreme Court explained as follows:

> The principle underlying the IRS regulations and practices-that a taxpayer should not be penalized for circumstances beyond his control-already recognizes a range of exceptions which there is no reason for us to pass on today. This principle might well cover a filing default by a taxpayer who relied on an attorney or accountant because the taxpayer was, for some reason, incapable by objective standards of meeting the criteria of "ordinary business care and prudence." In that situation, however, the disability alone could well be an acceptable excuse for a late filing.

*Boyle*, 469 U.S. at 248 n.6.

Johnson Systems argues that the disability exception applies in this instance because the individuals with ultimate corporate authority, Dewey and Gail Johnson, were prevented from carrying on normal business operations by circumstances beyond their control throughout the 2001 through 2005 tax years. After reviewing all the evidence submitted by both parties and viewing same in the light most favorable to the debtor as the party opposing the IRS' cross-motion for summary judgment, the Court finds there is no genuine issue of material fact in this case and that the IRS is entitled to judgment as a matter of law.

Johnson Systems failed to exercise "ordinary business care and prudence" to ensure its returns were timely filed and paid. For over five years, Dewey and Gail Johnson were both aware that they had not filed tax returns on behalf of Johnson Systems and yet they continued to operate the business simply hoping that things would get better. They consciously decided not to hire additional help to ensure that the tax returns were filed and taxes were paid. The Johnsons knew that the debtor's corporate tax returns were not being prepared and filed, yet failed to correct the situation for more than five years.

Johnson Systems cites the case of *Irving v. Commissioner of Internal Revenue*, 2006 WL 2370238 (U.S. Tax Ct. 2006) in support of its argument that the Johnsons family illnesses prevented the debtor from carrying on normal business operations throughout the 2001 through 2005 tax years. In *Irving*, the United States Tax Court held that individual taxpayers' delay in filing their 2000 tax return until March of 2002 was due to reasonable cause and not willful neglect where prior to filing the husband suffered a debilitating physical ailment and the wife suffered a miscarriage. Tthe petitioners operated an embroidery

13

business during the relevant time period. The petitioners maintained their business records with computer software and stored the records in both electronic and paper form. However, before the return was filed the petitioners lost the electronic records due to a computer malfunction and had already destroyed the paper records when they ceased to operate the embroidery business. The petitioners lacked the resources to hire a professional tax-preparer so they received assistance from a friend with accounting knowledge who was apparently able to access their electronically stored business records and assist the petitioners in filing the 2000 tax return.

Although the *Irving* case does not go into great factual detail supporting its finding of reasonable cause, the Court finds that the case is distinguishable from the facts in this case where the Johnsons failed to file the debtor's returns not just for a single year, but for a period of time that expanded more than five years while the Johnsons continued to perform other duties for the debtor. In *Irving* both the taxpayers suffered medical problems prior to filing the return and were further delayed in filing the return due to a computer malfunction. Although the taxpayers could not afford to hire professionals to help them retrieve their tax records and prepare their returns, the taxpayers took steps to enlist the help of a friend who could help them file their return within the following tax year. In this case, while the Court has absolutely no doubt that the Johnsons were under a great deal of stress caring for their parents and dealing with the eventual loss of same and the Court sympathizes with the Johnsons, the Court simply does not find that it was reasonable for the Johnsons to have ignored their responsibility on behalf of the debtor to file and pay the debtor's taxes for a

14

period of more than five years while at the same time continuing the daily operations of the business.

This case is more akin to the case cited by the IRS, *Carlson v. United States*, 126 F.3 915 (7th Cir. 1997), wherein the Seventh Circuit found that a taxpayer's failure to pay was not due to reasonable cause where the taxpayer, a lawyer, asserted that he failed to pay his taxes for a three year period due to the financial and mental strain caused by the medical condition of his youngest son who was dealing with manic depressive schizophrenia. The court of appeals explained that "[a] taxpayer exercises ordinary business care and prudence 'if he ma[kes] reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.' 'Undue hardship' means more than mere inconvenience. . . . It must be substantial financial hardship, 'for example, loss due to the sale of property at a sacrifice price.'" *Carlson*, 126 F.3d at 921 (citations omitted). In *Carlson* the taxpayers had significant income which exceeded the substantial medical expenses the taxpayers paid for their son during the relevant time period. The court of appeals found it significant that the taxpayers made no attempt to set aside any of the funds to pay their tax liabilities and made no attempt to conserve assets during the relevant time period. While the court of appeals agreed with the taxpayers that "financial, mental, and emotional hardship caused by the serious illness of a family member might add up to reasonable cause," the court concluded that the *Carlsons'* particular situation failed to satisfy the reasonable cause standard.

15

The taxpayers' son lived with them during the relevant time period, was uninsured, and could not be left alone. He was violent and stole from family members and generally made the taxpayers lives "a living nightmare." *Carlson*, 123 F.3d at 922-923. Although the court of appeals sympathized with the taxpayers, the court determined that the type of "illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for the taxpayer to comply – things like emergency hospitalization or other incapacity occurring around tax time." *Id.* at 923. While the court noted that the taxpayers failed to produce any evidence establishing the likely effect of their son's illness on those around him, the court found that the "best indication that the son's illness did not create an undue mental or emotional hardship" was how the taxpayers were able to exercise ordinary care and prudence in regard to many other matters despite their son's illness. *Id.* at 923. For example, Mr. Carlson continued to run a profitable law firm, he continued to pay all of his employees, and for a portion of the time withheld taxes from their wages. The facts simply showed that their "son's illness really was not all-consuming." *Id.*

While there is evidence in this case that Johnson Systems was operating on a minimum budget during at least part of the relevant time period, the Court concludes similar to the court of appeals in *Carlson* that the time the Johnsons' spent caring for their parents, while no doubt exhausting both physically and emotionally, simply did not prevent the Johnsons from first filing their tax returns and paying same. Although the Court will not go so far as to hold as the Seventh Circuit did that the type of illness or debilitation that might

16

create reasonable cause is limited to situations involving emergency hospitalization or other incapacity occurring around tax time, the Court does find similar to the *Carlson* court that the best indication that Johnson Systems failure to file and failure to pay was not due to reasonable cause is how the Johnsons were able to exercise ordinary care and prudence in regard to carrying out the debtor's daily business operations during the relevant time period.

Although Dewey Johnson chose to turnover sales responsibility to a sales team which in hindsight turned out to be a mistake, he nevertheless continued to work at Johnson Systems on regular, if not daily basis. Similarly, although it is clear from the evidence that Gail Johnson severely limited her time at the business while providing almost constant care for approximately a ten month period during 2002 for her father-in-law and then later traveling at least three of four days a week for a period of two to three years while caring for her mother, she nevertheless continued to sign up to 75 checks per month for the debtor and continued to process payroll for the debtor. At least one Johnson or the other was available to operate the debtor's daily business at all times throughout the relevant time period.

There is no dispute that the Johnsons knew that taxes were owed, that the tax returns were not being filed, and that the debtor's taxes were not being paid. The Johnsons continued to operate the debtor's business on a daily basis, continued to pay employees, continued to pay other creditors even though not always in a timely manner, and continued to pay themselves if funds were available after paying other employees first. Although Gail Johnson spent a great deal of time caring first for her father-in-law and then for her mother, she nevertheless remained available to discuss any business concerns with her husband and

Case 09-81758-JAC11    Doc 97    Filed 06/21/10    Entered 06/21/10 15:32:09    Desc Main
Document      Page 17 of 22

in fact it appears that they openly discussed the fact that the debtor was not filing nor paying its tax debts and choose not to hire someone to help them satisfy their tax obligations. Instead, the Johnsons made a conscious decision to pay other creditors, employees and themselves, while not paying the IRS. The Court concludes that the Johnsons' selective inability to pay does not constitute reasonable cause. *See Goodwin v. Commissioner of Internal Revenue*, 2003 WL 22333018 *10 (U.S. Tax Ct. 2003)("A taxpayer's selective inability to perform his or her tax obligations, while performing his regular business and personal activities, does not excuse failure to file.")

It is further important to remember that a majority of the tax penalties at issue in this case arose from the debtor's failure to pay withholding taxes. The penalties imposed by the IRS for failure to file and pay withholding taxes totaled $99,176.33 for the fourth quarter of 2003 through the third quarter of 2004, the second quarter of 2005, and the third and fourth quarter of 2007. The debtor does not, however, dispute the tax penalties for the third and fourth quarter of 2007 which leaves penalties in dispute for withholding taxes through the second quarter of 2005 totaling $95,281.39.

As the Sixth Circuit explained in *Brewery, Inc. v. United States*, 33 F.3d 589, 592 (6th Cir. 1994), in determining whether a taxpayer exercised ordinary business care and prudence in providing for the payment of its tax liability, consideration must be given to the nature of the tax which the taxpayer has failed to pay. Because the funds not deposited or paid to the United States in *Brewery* were funds held in trust for the government, the court of appeals

18

explained that the facts and circumstances required to establish reasonable cause had to be particularly compelling. The court of appeals explained:

> Taxes withheld from the wages of an employee are held by the employer in trust for the government. 26 U.S.C. § 7501(a). These trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer, including salaries. . . . It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern-the government cannot be made an unwilling partner in a floundering business. *See Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir. 1987).

*Brewery,* 33 F.3d at 593 (quoting *Collins v. United States*, 848 F.2d 740, 741-42 (6th Cir. 1988)).

While this Court is not following the bright line rule established by the Sixth Circuit to the extent that the court of appeals found that financial difficulties alone can never constitute reasonable cause for abatement of a penalty, the Court does believe that it is important to note that a significant amount of the penalties in this case were imposed because the debtor did not file nor pay its withholding taxes, choosing instead to pay other creditors, employees, and the Johnsons' salaries before satisfying its trust fund obligations. *See Staff It, Inc. v. United States*, 482 F.3d 792 (5th Cir. 2007)(finding that the nature of the taxpayer's actions and the nature of the tax at issue must be considered in determining whether a taxpayer exercised ordinary business care and prudence).

The debtor relies heavily on the case of *Eastwind Industries, Inc. v. United States,* 196 F.3d 499 (3rd Cir. 1999) in which the Third Circuit disagreed with the *Brewery* case to the extent *Brewery* refused to consider the financial difficulties of the taxpayer. Instead, the

19

Third Circuit found that all the facts and circumstances of the taxpayers' financial situation should be examined. In that case, the court of appeals found that the taxpayers failure to pay trust fund taxes was due to reasonable cause and not willful neglect where the taxpayer manufactured military clothing and was unable to pay its taxes because corrupt government employees interfered with the taxpayer's government contracts. The taxpayer in *Eastwind* continued to operate at a minimal level in order to collect monies contractually due from the government while fighting the corrupt government employees so that is could pay the trust fund taxes and its other debts.

While this Court agrees that all the facts and circumstances of a taxpayer's financial situation should be examined, the Court simply disagrees with the debtor in this case about whether the facts in this case when viewed in the light most favorable to the debtor satisfy the reasonable cause standard under the circumstances of this case. While the Court does not doubt the Johnsons' testimony regarding the tremendous pressure they were under during the relevant time period, the Court cannot find that the debtor's failure to file and pay taxes was due to reasonable cause given the nature of underlying tax debt in this case, the number of years at issue during which the Johnsons could and should have dealt with the debtor's tax issues, and the fact that the Johnsons were able to continually operate and satisfy the debtor's other daily business needs.

### *Willful Neglect*

The Court further finds that the debtor's failure to pay was due to willful neglect. For purposes of 26 U.S.C. §§ 6651(a)(1), (a)(2), "the term 'willful neglect' may be read as

20

meaning a conscious, intentional failure or reckless indifference." *United States v. Boyle*, 469 U.S. 241, 243 (1985).   Under this standard, willful neglect will be found unless "the failure to file a return was the result 'neither of carelessness, reckless indifference, nor intentional failure." *Staff It, Inc. v. United States,* 482 F.3d 792, 798 (5th Cir. 2007).

The Court finds that the debtor's failure to file and pay the taxes due was a result of the Johnsons' conscious, intentional failure to file and pay same.   The Johnsons both testified that they knew they were not filing the tax returns nor paying the debtor's taxes as same became due.   It appears that the Johnsons simply chose not to file the returns on behalf of the debtor because the company was not generating sufficient funds during the relevant time period to pay the taxes while paying the debtor's other expenses, including the Johnsons' salaries.   The Johnsons made a conscious, deliberate decision to not pay the debtor's taxes nor file the debtor's tax returns and instead used the funds generated from the business to pay trade creditors and salaries.   Although the Johnsons considered hiring outside help to alleviate some of Gail Johnson's duties which included preparing some of the tax forms, the Johnsons made a conscious decision to continue operating as they had in the past without additional assistance.   Accordingly, the Court finds that the debtor's failure to pay and failure to file tax returns was the result of willful neglect.

A separate order will be entered consistent with this opinion.

**DONE and ORDERED** this date: June 21, 2010.

/s/   Jack Caddell
Jack Caddell
United States Bankruptcy Judge

21

JAC/mhb

xc:    Debtor(s)

        Angela Ary, attorney for plaintiff(s)

        William E. Farrior, attorney for defendant(s)

        Richard Blythe, bankruptcy administrator